# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| THELMA TURNER, ) <br> ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br>     Defendant. ) | Case No: 1:13-cv-01260-STA-egb |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Thelma Turner filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act").[1] Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on June 8, 2012. On July 27, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the

---

[1] Plaintiff previously filed an application for disability insurance benefits on June 13, 2005. The decision denying Plaintiff benefits was affirmed by the Court of Appeals. *See Turner v. Astrue*, No. 11-5400 (6th Cir. June 20, 2012). While Plaintiff's claim was pending at the Court of Appeals, Plaintiff protectively filed the current application, alleging that she became disabled on July 27, 2007, the day after the previous ALJ's decision. (R. 140-143.)

1

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[2] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[3] and whether the correct legal standards were applied.[4]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] It is "more than a mere scintilla of evidence, but less than a preponderance."[6] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[7] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[8]

---

[2] 42 U.S.C. § 405(g).

[3] *Id.*

[4] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[6] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[7] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[8] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on July 3, 1962.[9] She has a high school diploma and past relevant work experience as a cashier and cook.[10] Plaintiff alleges that she became unable to work on July 27, 2007, due to a left knee replacement; right knee problems requiring a knee replacement; a bulging disc; herniated disc in her back; tendinitis in her shoulders, elbows, and wrists; arthritis; fibromyalgia; and high blood pressure.[11]

The ALJ enumerated the following findings:[12] (1) Plaintiff met the insured status requirements through December 31, 2007;[13] (2) Plaintiff has not engaged in substantial gainful activity from the alleged onset date through her last date insured ("DLI"); (3) Plaintiff has the following severe impairments: degenerative joint disease of both knees (status post-arthroscopic surgery on the left in August 2004 and on the right in December 2004); lumbar spinal degenerative disc disease; and obesity; but she does not have impairments, either alone or in

---

[9] (R. 40, 160, 196, ECF No. 7-3.)

[10] (*Id.* at 172, 179.)

[11] (*Id.* at 171, 198, 219.)

[12] In applying the sequential evaluation process to Plaintiff's claim, the ALJ considered the findings from the prior ALJ decision dated July 26, 2007. (*Id.* at 24-26, 80-93.) Absent new and material evidence establishing changed circumstances, the current ALJ was bound by the findings of the prior ALJ. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840-42 (6th Cir. 1997); *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990). Plaintiff received general medical care from Jack G. Pettigrew, D.O., and Adam English, D.O., at the Brownsville Family Medical Clinic ("BFMC"). (R. 24, 501-668.) Other than medication refills and routine exams, such as mammograms, the only BFMC treatment that Plaintiff received during the relevant period was a December 6, 2007, "well woman exam" and treatment for a cold on December 17, 2007. (*Id.* at 24, 502, 505, 518-20, 604-10, 728-40.) The ALJ properly determined that this evidence was not material to warrant a change in any prior findings from the July 26, 2007, denial decision.

[13] A claimant must prove that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101, 404.131, 404.315(a). Plaintiff's insured status expired on December 31, 2007. (R. 160, 196.) Plaintiff, therefore, had to prove that she became disabled on or before that date. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990).

combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform a reduced range of sedentary work as defined in 20 C.F.R. 404.1567(a); (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because Plaintiff has no transferable skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[14]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[15] The claimant bears the ultimate burden of establishing an entitlement to benefits.[16] The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[17]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

---

[14] (R. at 24-28.)

[15] 42 U.S.C. § 423(d)(1).

[16] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[17] *Id.*

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[18]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[19] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there are substantial numbers of jobs that exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the ALJ erred by not properly weighing the opinions of her treating physicians and by making an improper credibility determination. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[20] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has

---

[18] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[19] 20 C.F.R. § 404.1520(a).

[20] 20 C.F.R. §§ 404.1502, 404.1527(c)(1).

5

examined the claimant but does not have an ongoing treatment relationship.[21] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[22] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[23]

In contrast, it is well-established that the findings and opinions of treating physicians are entitled to substantial deference.[24] A treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical advisor.[25] If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.[26] Furthermore, "[i]f the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a

---

[21] *Id.* §§ 404.1502, 404.1527(c)(2).

[22] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

[23] 20 C.F.R. § 404.1527(c).

[24] *See Walters*, 127 F.3d at 529–30; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (noting "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

[25] *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

[26] 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."[27]

Closely associated with the treating physician rule, "the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."[28] Moreover, "[t]hose good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"[29]

In the present case, concerning Plaintiff's knees, on July 31, 2007, Plaintiff told Dr. David Deneka of OrthoMemphis that she had fallen the day before and had aggravated her knee pain.[30] She reported that she had been doing water aerobics twice a week and that the exercise did "help a bit."[31] She returned on October 24, 2007, using a quad cane and reported continuing knee pain, worse on the left.[32] Dr. Deneka performed a series of three Euflexxa injections in both knees on November 13, 2007, November 21, 2007, and November 28, 2007, and fitted her for a left knee support brace.[33] On January 23, 2008, Dr. Deneka reported that the injections had

---

[27] *Blakley*, 581 F.3d at 406 (citation omitted.).

[28] *Id.* (citation omitted.).

[29] *Id.* (citation omitted.).

[30] (R. 24, 391.)

[31] (*Id.*)

[32] (*Id.* at 390.)

[33] (*Id.* at. 387-90.)

been effective and that Plaintiff's left knee brace, in particular, had "helped her tremendously."[34] Plaintiff had no significant knee tenderness, full range of knee motion, and no instability.[35] She was no longer taking anti-inflammatory medications and was only using Gabapentin for pain control.[36]

Plaintiff did not go back to Dr. Deneka until June 4, 2008, because she had aggravated her knee pain in a fall in late May 2008.[37] Dr. Deneka reported that Plaintiff had been "doing fairly well up until her fall over the Memorial Day weekend."[38] She received another series of three Euflexxa injections at weekly intervals in August 2008.[39] Those injections were not as effective as they had been in the prior year.[40] Dr. Deneka continued to describe Plaintiff as not in acute distress.[41] On July 29, 2009, he reported that gradual progression of knee symptoms warranted a referral to one of his surgical partners, Dr. Timothy Krahn.[42]

---

[34] (*Id.* at 386.)

[35] (*Id.*)

[36] (*Id.*) Plaintiff also had one visit with a rheumatologist, Dr. Hugh Holt, within the relevant adjudication period. (*Id.* at 348.) Dr. Holt reported that Mobic had been beneficial for pain control and prescribed Gabapentin. (*Id.* at 344.)

[37] (*Id.* at 383.)

[38] (*Id.* at 382.)

[39] (*Id.* at 378-82.)

[40] (*Id.*)

[41] (*Id.* at 377, 378, 382.)

[42] (*Id.* at 376.) The ALJ rejected Dr. Khran's opinion because Plaintiff was not referred to him until eighteen months after her date last insured and surgery was not performed until more than a year after the referral. (*Id.* at 25.) As noted by the ALJ, "Dr. Khran's attempts to relate his pessimistic assessment of May 21, 2012, provided more than four years after the DLI, back to within the relevant adjudication period on July 27, 2007, almost two full years before he ever

8

Plaintiff also alleged hand and shoulder pain.[43] The ALJ rejected these allegations because there was no corroborating objective medical evidence.

Concerning Plaintiff's allegations of depression, the only evidence from the relevant adjudication period was a November 2, 2007, report from Pathways confirming that Plaintiff had previous successful treatment during 2005-2006 for being "mildly" depressed and required no more treatment.[44] The prior ALJ had already considered this evidence in the denial of July 26, 2007.[45] Plaintiff failed to prove that she had additional limitations from her depression beyond those found by the current ALJ.[46]

The current ALJ noted that Plaintiff had received orthopedic treatment from Dr. Deneka and doctors at OrthoMemphis for her knee pain and also for occasional back pain.[47] She pointed out that the prior denial of July 26, 2007, considered all OrthoMemphis records up through and including a May 21, 2007, medical source statement from Dr. Deneka.[48] The current ALJ properly concluded that that opinion had no bearing on the relevant adjudication period other than to endorse the residual functional capacity reached in the July 26, 2007, denial.[49] The

---

saw the claimant, are medically unsupported and, consequently accorded no weight in this decision." (*Id.* at p. 26.)

[43] (*Id.* at 25, 51-52.)

[44] (*Id.* at 25, 255-75.)

[45] (*Id.* at 85.)

[46] *See Drummond*, 126 F.3d at 840-42.

[47] (R. 24.)

[48] (*Id.* at 24, 89, 254.)

[49] (*Id.* at 24 – 25.)

ALJ's reasoning is consistent with *Drummond*, which requires new and material evidence establishing changed circumstances for the ALJ to be allowed to change the findings of the prior ALJ, and her analysis complied with the treating physician rule.[50]

The ALJ reasoned that Dr. Deneka's opinion was not entitled to weight because it was inconsistent with the type, extent, frequency, and effectiveness of Plaintiff's treatment as well as the clinical findings. Plaintiff fell and aggravated her knee problems on July 30, 2007. However, within six months of that treatment, she had such a good response to Euflexxa injections and a left knee support brace that, by January 23, 2008, she was off all anti-inflammatory medications, had no significant tenderness or joint instability, and had full range of joint motion.[51] The ALJ pointed out that it was not until four months later, over Memorial Day weekend in 2008, almost five months after her DLI, that she fell again and aggravated her knees; Dr. Deneka even stated on July 16, 2008, that Plaintiff had been "doing fairly well up until her fall over the Memorial Day weekend."[52] Thus, the ALJ's reasons for the weight given to the opinions of Dr. Deneka and Dr. Khran are supported by substantial evidence.[53]

---

[50] *Drummond*, 126 F.3d at 840-42.

[51] (R. 25.)

[52] (*Id.*)

[53] *See e.g., Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. 2008) ("However, . . . the ALJ here did not summarily dismiss the treating physicians' opinions; rather, the ALJ provided a lengthy, accurate, and thorough discussion of Vance's treating physicians' reports and findings."); *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 690 (6th Cir. Aug. 7, 2007); ("The ALJ did not summarily dismiss Dr. Bansal's opinion. Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence. This is all that we require when reviewing an administrative law judge's decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement.").

Although a physician's opinion about what a claimant can and cannot do is relevant evidence, that opinion is not determinative because the ALJ has the responsibility of assessing the claimant's residual functional capacity.[54] The responsibility for deciding issues such as whether the claimant's impairments meet or equal a listed impairment, the assessment of the claimant's residual functional capacity, and the application of vocational factors rests with the Commissioner.[55] Opinions on these issues "are not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."[56] "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."[57] Consequently, the ALJ in this case acted within her authority.

Plaintiff's argument that the ALJ should have obtained a medical source statement and, because she did not do so, the record is incomplete is without merit. The regulations provide that "the absence of such a statement in a consultative examination report will not make the report incomplete."[58]

---

[54] *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2012).

[55] *See* 20 C.F.R. § 404.1527(e).

[56] 20 C.F.R. § 404.1527(e); *see* SSR 96-5p, 1996 WL 374183 (1996).

[57] *Coldiron*, 391 F. App'x at 439; *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 722 (6th Cir. May 7, 2012) (discounting claimant's assertion that ALJ overstepped authority in interpreting school records).

[58] 20 C.F.R. § 404.1519n(c)(6).

Plaintiff also contends the ALJ was required to obtain the testimony of a medical expert before she could reject the treating physicians' opinions. Plaintiff's argument finds no support in the Social Security Act, the implementing regulations, and the relevant Social Security rulings.[59] The ALJ reviewed the record and found that Plaintiff had severe impairments that arose from her knee surgeries. Plaintiff has not pointed to any contemporaneous evidence to show that she had other severe impairments during the time that she remained insured. Thus, the ALJ acted within her discretion by not obtaining the services of a medical advisor. As the ALJ found, the evidence during the relevant adjudication period did not show that Plaintiff had any severe impairments other than those found in the July 26, 2007, denial.[60]

Plaintiff also complains of the ALJ's credibility determination. The ALJ rather than this Court "evaluate[s] the credibility of witnesses, including that of the claimant."[61] A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[62] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[63] This Court is required to "accord the ALJ's determinations of credibility great weight and deference

---

[59] *See* 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 404.1529, 404.944, 404.946, 404.953, 404.955.

[60] (R. 25, 493-500, 604-606, 670-77.) *See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) ("Subjective claim of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability.)

[61] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[62] *Id.*

[63] *Id.*

12

particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[64] However, the ALJ's credibility finding "must find support in the record."[65]

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the severity of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity.

In making her credibility determination, the ALJ considered Plaintiff's testimony denying any significant benefits from medication or any other treatment prior to her DLI.[66] The ALJ pointed out that the treatment records refuted Plaintiff's testimony and, in fact, showed improvement in her condition after treatment.[67] It is well-established that an ALJ may discount a claimant's credibility when she "finds contradictions among the medical records, claimant's testimony, and other evidence."[68]

Additionally, the ALJ looked at Plaintiff's daily activities and found that those activities were inconsistent with her alleged impairments. Plaintiff denied that she could lift more than five pounds and stand, walk, or sit for more than twenty to thirty minutes. However, in a function report, Plaintiff stated that she ironed for ten minutes, cleaned and did laundry for six hours, shopped once a week for an hour and a half at the time, and attended church.[69] The ALJ's

---

[64] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[65] *Id.*

[66] (R. 45.)

[67] (*Id.* at 27.)

[68] *See Whitfield v. Comm'r of Soc. Sec.*, 2014 WL 1329362 at *9 (W.D. Mich. Mar. 28, 2014).

[69] (R. 185 – 192.)

13

finding that these activities are inconsistent with the level of limitation that Plaintiff alleges is supported by substantial evidence.[70]

Plaintiff complains that the ALJ did not adequately discuss the factors listed in Social Security Ruling 96-7p in evaluating her credibility. SSR 96-7p provides factors that may be considered in evaluating credibility, including medical signs and laboratory findings; diagnosis and prognosis of the medical opinions; and statements and reports from the individual and the medical sources. SSR 96-7p also provides other factors, including daily activities; location, duration, and frequency of symptoms; factors precipitating and aggravating the symptoms; type, dosage, effectiveness and side effects of medication; treatment other than medication; measures used by individual to relieve symptoms; and any other factors concerning the individual's functional limitations. As already noted, the ALJ looked at several factors including the lack of significant clinical and diagnostic findings, Plaintiff's activities, and the conflicts between her testimony and the medical record.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[71] The Commissioner may carry this burden by applying the medical-vocational grids[72] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on

---

[70] *See* 20 C.F.R. § 404.1529(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations); *Warner*, 375 F.3d at 392 (6th Cir. 2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain).

[71] *Jones*, 336 F.3d at 474.

[72] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

14

whether the claimant has transferable work skills.[73] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the testimony of a vocational expert may be used to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[74]

Here, the ALJ relied on the testimony of a vocational expert in determining that there were significant numbers of jobs in the national economy that Plaintiff could perform.[75] The vocational expert's testimony was in response to a hypothetical question that set forth all the reasonable limitations Plaintiff had on her ability to work and, therefore, the ALJ properly relied on that testimony in her decision.[76] The vocational expert's testimony provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled. Because substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Act during the relevant period from her alleged onset date of July 27, 2007, through her date last insured of December 31, 2007, the decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 1, 2016.

---

[73] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

[74] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001).

[75] (R. 28.)

[76] *See Foster*, 279 F.3d at 356-57.